400 S.E.2d 897

**STATE of West Virginia**

v.

**Floyd Junior MILLER.**

**No. 19448.**

Supreme Court of Appeals of West Virginia.

Dec. 19, 1990.

George E. Lantz, Lantz & Tebay, Parkersburg, for Floyd Junior Miller.

Roger W. Tompkins, Atty. Gen., Joanna I. Tabit, Asst. Atty. Gen., Attorney General's Office, Charleston, for State of W.Va.

PER CURIAM:

On October 20, 1986, the appellant, Floyd Junior Miller, was indicted by a Wood County grand jury and charged with malicious assault in connection with an incident which occurred on August 19, 1986. After a four day trial, a jury found the appellant guilty of unlawful assault on February 27, 1987. Thereafter, on March 11, 1987, the State filed a recidivist information pursuant to W.Va.Code §§ 61–11–18 and 61–11–19. The appellant was convicted of recidivism and on April 14, 1987 he was sentenced to life in prison. The appellant now appeals his conviction and subsequent sentencing under the Habitual Criminal Statute.

The appellant was convicted of unlawful assault as a result of a shooting incident that occurred in his home in the early morning hours of August 19, 1986. The victim, Charles Fought was a houseguest of the appellant. Fought was awakened and ordered downstairs by the appellant, who was holding a gun on his wife, Lois Miller. The appellant told Fought to sit on the couch and said, "I am going to kill my wife and you are going to watch it." Fought tried to reason with the appellant, who then threatened to shoot Fought if he got up from the couch. The appellant put down the gun while lighting a cigarette and Fought took the opportunity to try to go back to bed. However, the appellant picked up the gun and shot Fought in the hand and stomach. The appellant's wife and Fought convinced him to call 911 for an ambulance. However, the appellant fled the scene and was arrested approximately six hours later.

After the appellant was found guilty of unlawful assault, the State filed a recidivist information pursuant to W.Va.Code §§ 61–11–18 and 61–11–19. The prior felonies which provided the basis for this action were a 1961 conviction for breaking and entering, a 1972 conviction for forgery and uttering, and a 1975 conviction for false pretenses.

On October 21, 1961 the appellant pled guilty in circuit court to the breaking and entering of a Parkersburg gas station. He was 16 years, 10 months old at the time. Although the appellant was originally sentenced to serve time in a forestry camp, he was later deemed unfit, returned to circuit court and sentenced to serve 1 to 10 years in Huttonsville. In 1972, the appellant pled guilty to forgery and uttering of a check for $423.20 and he was sentenced to 1 to 10 years in the State Penitentiary at Moundsville. In 1975, the appellant again pled guilty, this time to a charge of false pretenses (illegally obtaining $30.56) for which he was sentenced to 5 years.

■ In this appeal, the appellant argues first that the trial court erred in refusing to award him a new trial because of the prosecution's failure to disclose prior to trial the existence of a tape recorded conversation wherein he phoned for assistance after the shooting. As we noted above, the appellant phoned 911 at the request of his wife and the victim sometime shortly after the shooting. At trial, the appellant's major defense was intoxication and he now maintains that the tape of the phone call is of major significance because it is the "best evidence" of his condition at the time of the shooting and shows that he was confused and that the victim was sitting close to him and helping him with the call.

According to the State, on December 30, 1986, it responded to a discovery request from the appellant by stating that "defen-

dant called for an ambulance upon shooting the victim." In addition, the State's first witness at trial, the victim Charles Fought, and defense witness Lois Miller both testified that the appellant called for an ambulance by dialing 911 after the shooting. Perhaps it did not occur to defense counsel that there would be tape recorded evidence of this conversation. Certainly, however, as the State points out, it is rather common knowledge that whenever someone calls 911, the conversation is recorded.

Exactly when the defense became aware of the existence of a tape of the 911 conversation cannot be ascertained through examination of the record in this case. However, there is no indication that the State was attempting in any way to withhold evidence from the defense. Indeed, we question why defense counsel would charge the State with a greater responsibility to know about the tape and, in turn, inform the defense of its existence.

Regardless of who knew and when, the fact is that the tape never came into evidence. In syllabus point 4 of *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982) this Court summarized the rule with regard to the failure to disclose evidence:

A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution.

Then, in *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989) (quoting from *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985)), we discussed the test as to whether such undisclosed evidence is in fact material to the defense:

The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

We do not believe that there is a "reasonable probability" that the result in this case would have been different if the 911 recording had been introduced into evidence. As the State points out, the appellant introduced substantial evidence in support of his claim that he was intoxicated at the time of the shooting. However, the jury obviously did not believe that this evidence negated a finding of specific intent on behalf of the appellant to "permanently maim, disfigure, disable or kill" Charles Fought. Thus, the appellant was convicted, although the jury found him guilty of unlawful assault rather than the more serious charge of malicious assault.

■ The appellant's second assignment of error merits little discussion. The appellant argues that the trial court erred in refusing to award him a new trial on the basis of newly discovered evidence. This new evidence apparently consists of the testimony of several inmates from the Wood County Correctional Center who were called to testify at a hearing on the appellant's motion for a new trial. These inmates supposedly testified that the victim, Charles Fought, told them sometime after the trial that he had lied on the witness stand and that the shooting was accidental.

Generally, "[o]n error, the appellate review of a ruling of the circuit court is limited to the very record made there." Syl. Pt. 1, *Hartman v. Corpening*, 116 W.Va. 31, 178 S.E. 430 (1935). In this case, a transcript of the post-trial hearing is not a part of the record of this case. The State apparently attempted to obtain a copy but was finally informed that a transcript was not available because no one had requested that the hearing be transcribed. This Court "cannot consider errors that are not documented in the record." *State v. Stewart*, 161 W.Va. 127, 131, 239 S.E.2d 777, 780 (1977); *see also* Syl.Pt. 6, *State v. Byers*, 159 W.Va. 596, 224 S.E.2d 726 (1976); *State v. McFarland*, 175 W.Va. 205, 332 S.E.2d 217, 232 (1985). Because the record before us contains no evidence to support the appellant's contention, it can not be considered by this Court as a basis for awarding the appellant a new trial.

■ Finally, the appellant argues that the trial court erred in sentencing him to

life in prison under the West Virginia Habitual Criminal Statute. We reject the appellant's contention that his 1961 conviction is invalid and cannot be used to support his life sentence under the recidivist statute.[1] However, we agree that in this case the imposition of a life sentence represents punishment which is disproportionate when consideration is given to both the underlying felonies and the final triggering offense.[2]

In syllabus point 7 of *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981), this Court set forth the standard for review of life recidivist sentences:

The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.

In *State v. Deal*, 178 W.Va. 142, 358 S.E.2d 226 (1987), we again noted that, "although sole emphasis cannot be placed on the character of the final felony, it is entitled to closer scrutiny than the other convictions, 'since it provides the ultimate nexus to the sentence.'" *Id.*, 178 W.Va. at 147, 358 S.E.2d at 231, quoting *Wanstreet v. Bor-*

*denkircher*, 166 W.Va. 523, 534, 276 S.E.2d 205, 212 (1981).

In this case, the final felony which triggered application of the recidivist statute was unquestionably a violent crime. The first underlying felony, the juvenile conviction for breaking and entering, posed only a threat of violence. However, the other two more recent underlying felonies were not crimes of even a potentially violent nature. Certainly, it cannot be said that the appellant had a history of violent felony convictions prior to this shooting incident.

As we have noted, we generally require that the nature of the prior felonies be closely examined. While not exclusive, the propensity for violence is an important factor to be considered before applying the recidivist statute. In the case now before us, we recognize that although the appellant's 1986 unlawful assault conviction was for a violent felony, none of his three underlying felonies actually involved violence. Moreover, we note that these three crimes spanned a period of twenty-five years. It could not be said of the appellant prior to this 1986 conviction that his criminal record exhibited "any discernible trend of violence." *State v. Oxier*, 179 W.Va. 431, 369 S.E.2d 866, 869 (1988) (J. Miller, dissenting opinion).

A life sentence is the maximum penalty prescribed by law in West Virginia. Because the underlying felonies in this case were all of a non-violent nature, and because the maximum penalty for the triggering felony is itself only ten years, we do not believe that the application of the recid-

---

1. The appellant suggests that the Circuit Court of Wood County did not have jurisdiction to accept his guilty plea to breaking and entering in 1961. However, at that time, W.Va.Code § 49–5–14(3) (1931) provided, in pertinent part:

If the child be over sixteen years of age at the time of the commission of the offense the court may, if the proceedings originated as a criminal proceeding in a court other than a juvenile court, enter an order transferring the case back to the court of origin, or to any court in the county having criminal jurisdiction; or if the case originated on petition in juvenile court, the court may enter an order showing its refusal to take jurisdiction and permit the child to be proceeded against in accordance with the laws of the State govern-

ing the commission of crimes or violation of municipal ordinances....

Because either the juvenile court or the circuit court had jurisdiction over juvenile offenders between the ages of 16 and 18, the Circuit Court of Wood County had proper jurisdiction over the appellant in this case, who was 16 years 10 months old at the time of this felony.

2. Article III, § 5 of the West Virginia Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offense." *See also State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980).

ivist statute so as to result in a life sentence is justified in this case. If a life sentence is imposed in this case, what remains in cases involving truly violent underlying felonies?

Accordingly, we remand this case to the Circuit Court of Wood County for resentencing.

Remanded.