FILED

**November 14, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

State v. Kilmer, 15-0859

LOUGHRY, Chief Justice, dissenting:

I dissent to the majority's decision to reverse the petitioner's recidivist sentence. This sentence–life in prison with the possibility of parole–is mandated by the Legislature through West Virginia Code § 61-11-18(c) (2014): "When it is determined . . . that such person shall have been twice before convicted" of a felony, "the person *shall* be sentenced to be confined in the state correctional facility for life." *Id.* (emphasis added).[1] Contrary to the majority's conclusion, there is nothing constitutionally disproportionate about imposing a sentence of life with the possibility of parole upon a criminal who brutally beats and then sexually assaults an injured woman, when these violent offenses represent an escalation in the culprit's existing felonious criminal record.

Many factors must be considered when addressing the proportionality of a recidivist life sentence under West Virginia Constitution article III, section five. In the

---

[1] When enacting the recidivist statute, the Legislature made a public policy decision to punish repeat felons more harshly. "'The Legislature has power to create and define crimes and fix their punishment[.]' Syl. Pt. 2, in part, *State v. Woodward*, 68 W.Va. 66, 69 S.E. 385 (1910)." Syl. Pt. 2, *State v. Butler*, 239 W.Va. 168, 799 S.E.2d 718 (2017). It is most certainly *not* the job of this Court to second-guess the Legislature on matters of public policy. *See* Syl. Pt. 2, in part, *Huffman v. Goals Coal Co.*, 223 W.Va. 724, 679 S.E.2d 323 (2009) ("This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation.").

1

analysis, initial emphasis is placed on the nature of the "final" felony, i.e., the offense for

which the recidivist life sentence is imposed:

> The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.

Syl. Pt. 7, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981). "Although sole emphasis

cannot be placed on the character of the final felony, it is entitled to closer scrutiny than the

other convictions, 'since it provides the ultimate nexus to the sentence.'" *State v. Deel*, 178

W.Va. 142, 147, 358 S.E.2d 226, 231 (1987) (quoting *Wanstreet v. Bordenkircher*, 166

W.Va. 523, 534, 276 S.E.2d 205, 212 (1981)). In addition to considering the actual violence

surrounding the perpetrator's felonies, a court takes into account the *possibility* for violence

and harm: "Rather clearly our law indicates that crimes involving the potentiality of violence

fall in the category of those supporting the imposition of a life sentence under the recidivist

statute." *State v. Oxier*, 179 W.Va. 431, 433, 369 S.E.2d 866, 868 (1988) (recognizing that

crime of breaking and entering carries potential for violence and danger to life); *see also*

*State v. Housden*, 184 W.Va. 171, 175, 399 S.E.2d 882, 886 (1990) (concluding that burglary

and grand larceny involve "the threat of harm or violence" and justify imposition of recidivist

life sentence).

2

Moreover, while an examination of the violent (or potentially violent) nature of the perpetrator's felonies is part of the proportionality analysis, it is certainly not the sole consideration. *See State v. Miller*, 184 W.Va. 462, 465, 400 S.E.2d 897, 900 (1990) (Acknowledging that while propensity for violence is "an important factor[,]" it is "not [the] exclusive" factor to be considered in a recidivist analysis); *c.f. State ex rel. Chadwell v. Duncil*, 196 W.Va. 643, 649, 474 S.E.2d 575, 579 (1996) (considering facts surrounding theft of almost $1,500 in goods from several stores to conclude that five-year recidivist enhancement under W.Va. Code § 61-11-18(a) was constitutionally proportionate for defendant convicted of felony grand larceny who had prior felony conviction of non-violent third offense shoplifting). When considering any claim of disproportionate sentencing, this Court considers many different factors pursuant to two tests: one subjective and one objective. Under the subjective test, a sentence is unconstitutional if it "shocks the conscience and offends fundamental notions of human dignity[.]" Syl. Pt. 5, in part, *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983). The objective test instructs us to consider such things as "the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." *Wanstreet*, 166 W.Va. at 523-24, 276 S.E.2d at 207, syl. pt. 5, in part.

Turning to the facts of this appeal, the petitioner's final felony, unlawful assault, was part of a horribly violent attack that he perpetrated upon his former girlfriend.[2] The evidence at trial indicated that, after refusing the victim's demand that he leave her home, the petitioner grabbed the victim, threw her on the hood of a car, picked her up again, and threw her on the floor of a carport causing her head to strike concrete. He then began choking the victim after which he threw her body toward a mud room. After knocking her to the mud room floor, he resumed choking her. Because he was searching for her hidden house key and was growing increasingly agitated, the victim was forced to give him the key. Once inside the victim's home, the petitioner grabbed the victim and slammed her to the floor. When she tried to stand, she fell because of terrible pain in her hip that was later determined to be caused by a fractured pelvis. The petitioner picked the victim up again, slammed her on the bedroom floor, and again choked her. He tried to remove her pants while she attempted to fend him off. The petitioner removed his belt, which the victim feared he would use to choke her. Afraid for her life, and despite her broken pelvis and other injuries, the victim was forced to endure the petitioner's sexual assault upon her. Thereafter, the victim was unable to walk without assistance because of pain from her injuries. Medical evidence showed the petitioner beat the victim so badly that in addition to breaking her

---

[2]The jury found the petitioner guilty of two counts of unlawful assault, West Virginia Code § 61-2-9(a) (2014 & Supp. 2017); two counts of domestic battery, West Virginia Code § 61-2-28(a) (2014 & Supp. 2017); and sexual assault in the second degree, West Virginia Code § 61-8B-4 (2014).

4

pelvis, he fractured three of her ribs, caused one of her lungs to deflate, and left her body covered with bruises and strangulation marks. The victim was hospitalized for almost two weeks, required the assistance of a walker while regaining the ability to walk, and could not work for two months. There can be no dispute that this was a heinous crime of violence. Indeed, this Court has previously recognized that unlawful assault is a crime of violence for purposes of a proportionality analysis. *See Miller*, 184 W.Va. at 465, 400 S.E.2d at 900 (stating that unlawful assault is "unquestionably a violent crime").

The petitioner's two prior felonies, which must be taken into account but receive less scrutiny than the current offense,[3] do not change the outcome of the proportionality analysis. The petitioner was convicted of driving while his license was revoked *because* he drove a vehicle while under the influence of alcohol or drugs ("DUI"), in violation of West Virginia Code § 17B-4-3(b) (2013 & Supp. 2017).[4] Contrary to the

---

[3]As explained above, "although sole emphasis cannot be placed on the character of the final felony, it is entitled to closer scrutiny than the other convictions[.]" *Miller*, 184 W.Va. at 465, 400 S.E.2d at 900 (citation and internal quotation marks omitted).

[4]West Virginia Code § 17B-4-3(b) provides:

> (b) Any person who drives a motor vehicle on any public highway of this state at a time when his or her privilege to do so has been lawfully revoked for driving under the influence of alcohol, controlled substances or other drugs, or any combination thereof, or for driving while having an alcoholic concentration in his or her blood of eight hundredths of one percent or more, by weight, or for refusing to take a secondary chemical test of blood alcohol content, is, for the first offense,

petitioner's argument, his license was not revoked for some *malum prohibitum* reason, such as the failure to renew his driver's license or pay parking tickets. If that had been the situation, these crimes would never have constituted felonies. Pursuant to West Virginia Code § 17B-4-3(a),[5] the crime of driving while revoked for some reason *other than DUI* is always a misdemeanor, even if committed three or more times. However, in West Virginia

---

guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for a period of not less than thirty days nor more than six months and shall be fined not less than $100 nor more than $500; for the second offense, the person is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for a period of not less than six months nor more than one year and shall be fined not less than $1,000 nor more than $3,000; for the third or any subsequent offense, the person is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for not less than one year nor more than three years and, in addition to the mandatory prison sentence, shall be fined not less than $3,000 nor more than $5,000.

[5]West Virginia Code § 17B-4-3(a) provides:

(a) Except as otherwise provided in subsection (b) or (d) of this section, any person who drives a motor vehicle on any public highway of this state at a time when his or her privilege to do so has been lawfully suspended or revoked by this state or any other jurisdiction is, for the first offense, guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $100 nor more than $500; for the second offense, the person is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $100 nor more than $500; for the third or any subsequent offense, the person is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for a period of not less than thirty days nor more than ninety days and shall be fined not less than $150 nor more than $500.

6

Code § 17B-4-3(b), the Legislature expressly made a third or subsequent offense of driving while revoked *for DUI* a felony punishable by a "mandatory prison sentence."[6]

The obvious reason why the offense of driving while revoked for DUI is punished more severely than other forms of driving on a revoked license, is the dangerous nature of DUI and the importance to public safety of keeping drunk drivers from returning to the roads. This is the same reason why the Court concluded that DUI is a crime of potential violence supporting the imposition of a recidivist sentence. *See State ex rel. Appleby v. Recht*, 213 W.Va. 503, 583 S.E.2d 800 (2002). When a person drives drunk, "[i]t is sheer fortuity . . . that he killed no pedestrians while behind the wheel." *Appleby*, 213 W.Va. at 515, 583 S.E.2d at 812 (citation and internal quotation marks omitted). Notably, the petitioner had to commit this serious crime at least four separate times to rack up two felony convictions.[7]

---

[6]*See supra*, note 4.

[7]In accordance with West Virginia Code § 17B-4-3(b), only the petitioner's third and fourth convictions for driving while revoked for DUI constituted felonies. However, the fact that these two crimes were enhanced to become felonies is irrelevant to the recidivist analysis. *See* Syl. Pt. 3, in part, *State v. Williams*, 196 W.Va. 639, 474 S.E.2d 569 (1996) ("Despite the fact that a third offense DUI felony conviction . . . results from an enhanced misdemeanor, the Legislature intended that this type of felony conviction be used for sentence enhancement in connection with the terms of the recidivist statute[.]"); *Chadwell*, 196 W.Va. at 647, 474 S.E.2d at 577 (concluding that felony third offense shoplifting may be used for recidivist enhancement).

7

When the petitioner's two prior felonies are considered in conjunction with the multiple violent felonies he committed against his ex-girlfriend in the instant case, it is clear that the petitioner has demonstrated a pattern of undeterred, escalating felonious behavior. Avoiding such repetition and escalation is exactly what the recidivist statute seeks to prevent:

> The primary purpose of our recidivist statutes, W.Va. Code, 61-11-18 (1943), and W.Va. Code, 61-11-19 (1943), is to deter felony offenders, meaning persons who have been convicted and sentenced previously on a penitentiary offense, from committing subsequent felony offenses. The statute is directed at persons who persist in criminality after having been convicted and sentenced once or twice, as the case may be, on a penitentiary offense.

Syl. Pt. 3, *State v. Jones*, 187 W.Va. 600, 420 S.E.2d 736 (1992); *accord Appleby*, 213 W.Va. 517, 583 S.E.2d at 814 ("West Virginia Code § 61-11-18 is designed to deter those who are incapable of conforming their conduct to legitimately enacted obligations protecting society. . . . States have a valid interest in deterring and segregating habitual criminals . . . and a compelling interest in ensuring the safety of the public roadways.") (internal citations and quotation marks omitted). To that end, the Legislature ordered that persons with three felony convictions "shall be sentenced to . . . [prison] for life." W.Va. Code § 61-11-18(c).

Having considered this matter in terms of both subjective and objective considerations, I am convinced that the petitioner's recidivist life sentence should stand. Imposing a life sentence with the possibility of parole upon a three-time felon who brutally beat and sexually assaulted a woman, certainly does not shock my conscience. Moreover,

8

objective considerations weigh in favor of this recidivist sentence, including the violent nature of the final felony, the Legislature's intent to punish with a "mandatory prison sentence" the crime of driving while revoked for DUI, and the deterrent purpose underlying the recidivist statute.

In reversing this recidivist sentence, the majority ignores many relevant considerations, including the horribly violent nature of the petitioner's unlawful assault, to focus entirely upon the nature of the petitioner's prior felonies. Then, the majority fails to recognize that serious safety concerns underlie the revocation of a driver's license for DUI. The majority's narrow, short-cited analysis is plainly contrary to our law. Because I find no basis on which to vacate the recidivist life sentence, I respectfully dissent.[8]

---

[8]I also find fault with the majority's failure to address one of the petitioner's two assignments of error; specifically, his claim that the circuit court erred by denying his motion for judgement of acquittal on the grounds of insufficiency of the evidence. The evidence of record clearly demonstrates that there was sufficient evidence to convict the petitioner–yet the majority refuses to even discuss this assignment of error. Perhaps the majority ignored this issue because cataloguing the evidence would highlight the exceptionally violent nature of the petitioner's recent crimes and thus detract from the majority's flawed analysis of the proportionality issue.