IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

_____

No. 17-0978

_____

FILED

May 30, 2019

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

TRAVIS R. NORWOOD,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Greenbrier County
The Honorable Robert E. Richardson, Judge
Criminal Case No. 16-F-136

AFFIRMED

_____

Submitted: February 5, 2019
Filed: May 30, 2019

Robert P. Dunlap, Esq.
Sarah F. Smith, Esq.
Robert Dunlap & Associates
Beckley, WV
Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Benjamin F. Yancey, III, Esq.
Assistant Attorney General
Charleston, WV
Counsel for the Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

CHIEF JUSTICE WALKER concurs and reserves the right to file a concurring opinion.

JUSTICE WORKMAN concurs, in part, dissents, in part and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt."  Syllabus Point 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

2.      "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled."  Syllabus Point 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

3. "When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt." Syllabus Point 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

4. "[A] circuit court has no jurisdiction to impose an enhanced sentence under the [recidivist] statute where the State fails to prove beyond a reasonable doubt "that each penitentiary offense, including the principal penitentiary offense, was committed subsequent to each preceding conviction and sentence." Syllabus, in part, *State v. McMannis*, 161 W. Va. 437, 242 S.E.2d 571 (1978).

5. "The primary purpose of our recidivist statutes, W. Va. Code, 61-11-18 (1943), and W. Va. Code, 61-11-19 (1943), is to deter felony offenders, meaning persons who have been convicted and sentenced previously on a penitentiary offense, from committing subsequent felony offenses. The statute is directed at persons who persist in criminality after having been convicted and sentenced once or twice, as the case may be, on a penitentiary offense." Syllabus Point 3, *State v. Jones*, 187 W. Va. 600, 420 S.E.2d 736 (1992).

6. A criminal defendant who has been twice convicted and sentenced for crimes punishable by confinement in a penitentiary, but has not discharged such prior

penitentiary sentences, and is subsequently convicted of a third crime punishable by confinement in a penitentiary, is subject to an enhanced sentence under our recidivist statute, West Virginia Code §§ 61-11-18 (2000) and 61-11-19 (1943).

7. "In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." Syllabus Point 5, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

8. "The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5 [of the West Virginia Constitution], will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute." Syllabus Point 7, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981).

Armstead, Justice:

Petitioner in the instant action and the defendant below, Travis Ray Norwood, (hereinafter, "Defendant Norwood"), was convicted by a jury of his peers on one count of delivery of a controlled substance – heroin – in violation of West Virginia Code § 60A-4-401(a)(2011). Following that conviction, pursuant to the provisions of West Virginia Code §§ 61-11-18 (2000) and 61-11-19 (1943), (hereinafter, collectively, "recidivist statute"),[1] the State filed an "Information Regarding Sentencing," which alleged that Defendant Norwood had previously been convicted and sentenced, on two separate occasions, of felony offenses that were punishable by incarceration in a penitentiary.

A trial was then conducted pursuant to the procedures contained in West Virginia Code § 61-11-19 (1943), and Defendant Norwood was found by that jury to be the same person who was previously convicted of two prior felony offenses. Based upon that verdict, and the plain language of the recidivist statute, the circuit court sentenced Defendant Norwood to "imprisonment in the penitentiary of this State for the rest of his natural life,"[2] on the predicate delivery of heroin charge.

In this appeal, Defendant Norwood raises three issues. First, he alleges the evidence was insufficient to sustain a guilty verdict on the delivery of heroin charge. Second, he argues that because he was on probation for his two prior felony convictions

---

[1] Our previous case law has, at times, referred to the recidivist statute as "The Habitual Criminal Act."

[2] Parole eligibility for Defendant Norwood will be determined by the Parole Board pursuant to the provisions of West Virginia Code § 62-12-13(c) (2015).

and he had not discharged either of those sentences, the circuit court's sentence was illegal. Finally, Defendant Norwood alleges the sentence of life in prison, on the charge of delivery of heroin, violates the proportionality clause contained in Article III, Section 5 of the West Virginia Constitution.

Having considered the parties' briefs and oral arguments, the submitted appendix record, and the pertinent authorities, we find no error. Accordingly, for the reasons set forth below, Defendant Norwood's conviction and sentence are affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts adduced at trial, and necessary to sustain a conviction for delivery of a controlled substance, show that on June 1, 2016, Defendant Norwood sold heroin to a confidential informant, (hereinafter, "C.I.") cooperating with the Greenbrier Valley Drug and Violent Crime Task Force (hereinafter, "Task Force"). On that date, the C.I. contacted Defendant Norwood and made arrangements to purchase an eight-ball (3½ grams) of cocaine. After that conversation, the C.I. called Task Force member Sergeant Brian Baker of the Greenbrier County Sheriff's Department. During this call, the C.I. informed Sergeant Baker that arrangements could be made to purchase cocaine from Defendant Norwood. Sergeant Baker advised the C.I. to set up the cocaine purchase. Following protocol established by the Task Force, the C.I. met with Sergeant Baker who searched both the C.I. and her car. Neither the C.I. had drugs or money on her person, nor did her car contain drugs or money.

2

At that time, Sergeant Baker provided to the C.I. $280 and placed clandestine audio and video recording devices in two locations in the C.I.'s car. After all was ready, the C.I. contacted Defendant Norwood to set up a meeting at the Pizza Hut in White Sulphur Springs to buy cocaine. Upon making these arrangements, the C.I. drove her car to the Pizza Hut, with Sergeant Baker following in his own vehicle. Sergeant Baker, parked at a distance, observed the C.I. pull into a parking spot located near the Pizza Hut.

Once the C.I. parked her car, Defendant Norwood exited the Pizza Hut and got into the C.I.'s car. For the first time, Defendant Norwood informed the C.I. he did not have any "powder," but he did have some "dog food." Defendant Norwood got out of the C.I.'s car and went back into the Pizza Hut. Once Defendant Norwood exited the C.I.'s car, the C.I. called Sergeant Baker and recounted her conversation with Defendant Norwood. Sergeant Baker testified the term "powder" is slang for cocaine, and the term "dog food" is slang for heroin. Sergeant Baker advised the C.I. to purchase the heroin.

Defendant Norwood reentered the C.I.'s car and was told by the C.I. that she wanted to buy the previously offered heroin. As Defendant Norwood did not have the heroin with him, the C.I. drove Defendant Norwood to his home in downtown White Sulphur Springs, where the C.I. gave $230 to Defendant Norwood. Defendant Norwood got out of the car and returned a short time later with a large bag of a substance believed by the C.I. to be heroin. Once in the C.I.'s car, Defendant Norwood poured some of that substance into a Pizza Hut receipt in the presence of the C.I. Defendant Norwood then

3

gave the receipt containing the substance to the C.I., returned $9 of the $230 that had been given to him, and exited the car, taking the remainder of the large bag with him.

Following the purchase, the C.I. was debriefed by Sergeant Baker and, pursuant to protocol, Sergeant Baker again searched the C.I.'s car and person for other drugs and money. Finding none, Sergeant Baker retrieved the clandestine audio and video recording devices from the C.I.'s car, the substance that was purchased by the C.I., and $59 of the $280 that was given to the C.I. for the transaction.

After debriefing, the C.I. and Sergeant Baker parted ways. Sergeant Baker went to his office, where he field-tested the substance purchased by the C.I., and determined it to be heroin. Sergeant Baker processed the heroin into evidence and secured it in the locked, temporary evidence locker at the station. On June 13, 2016, Corporal Nathan Hersman of the West Virginia State Police removed the heroin from its temporary location, logged it into evidence, and placed it in the main evidence locker at the station. On June 16, 2016, Corporal Hersman removed the heroin out of the evidence locker and delivered it to the West Virginia State Police Forensics Lab in South Charleston, where it was further tested and confirmed to be heroin.

Defendant Norwood was indicted on October 4, 2016, on one count of delivery of heroin. On May 4, 2017, following a two-day trial, Defendant Norwood was convicted of that crime. During the trial, Defendant Norwood extensively cross-examined all prosecution witnesses – two police officers and the C.I.. During closing argument,

4

Defendant Norwood argued the police failed to establish the chain of custody and the evidence as a whole was insufficient to support his conviction.

Following Defendant Norwood's conviction, the State filed its recidivist information on May 19, 2017, and, on September 25, 2017, Defendant Norwood was found by a jury to be the same person as had previously been convicted of two prior felonies. During the recidivist trial, Sergeant Baker testified Defendant Norwood was the same person who was twice previously sentenced to a penitentiary. The first prior conviction and sentence was for the felony offense of eluding police in Chesterfield County, Virginia, on October 28, 2008. The second prior conviction and sentence was for the felony offense of selling, giving, distributing, or possessing with the intent to sell, give, or distribute more than one-half ounce, but not more than five pounds of marijuana, in Alleghany County, Virginia, on February 1, 2016. The circuit court instructed the jury that the prior Virginia convictions constituted felonies "for which a penitentiary sentence could be imposed under the laws of the State of West Virginia." Having heard the evidence, the jury returned its verdict that Defendant Norwood was the same person who was previously convicted of two felony offenses.

After the jury's verdict, the matter proceeded to the sentencing phase. There, the circuit court inquired of Defendant Norwood and his counsel if there was any argument regarding proportionality to be made. Hearing none, the circuit court found both the delivery of heroin conviction, as well as the prior felony conviction of eluding police, to

be crimes of potential violence, and pursuant to the plain language of West Virginia Code § 61-11-18 (2000), sentenced Defendant Norwood to a term of life in the penitentiary.

Following entry of the circuit court's sentencing order, Defendant Norwood filed this appeal.

## II. STANDARD OF REVIEW

Each assignment of error has a different standard of review. For sufficiency of the evidence, the standard is:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.
>
> . . . .
>
> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

6

Syllabus Points 1 and 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). We have further stated:

> When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Syllabus Point 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

Sentencing orders are reviewed "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands. Syllabus Point 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 1, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011); Syllabus Point 1, *State v. Kilmer*, 240 W. Va. 185, 808 S.E.2d 867 (2017).

## III. ANALYSIS

### A. Sufficiency of the Evidence

Defendant Norwood makes two arguments challenging the sufficiency of the evidence. The first tests the method by which the Task Force stored the heroin in its evidence locker, calling into question the chain of custody. The second relates to the sufficiency of the evidence as a whole, which Defendant Norwood alleges was not sufficient to prove guilt beyond a reasonable doubt. As discussed below, the evidence

7

adduced at trial demonstrates Defendant Norwood cannot meet the heavy burden set forth in Syllabus Points 1 & 3, *State v. Guthrie,* 194 W. Va. 657, 461 S.E.2d 163 (1995), on either issue.

          i.        Sufficiency of the Chain of Custody

Defendant Norwood asserts that there was a break in the chain of custody because the heroin was left unattended in the Task Force's temporary evidence locker for 13 days, and that evidence was insufficient to sustain his conviction. This argument has no merit. As a practical matter, police officers cannot be expected to sit in an evidence locker 24 hours a day, 7 days a week, 365 days a year. What they can do – and what they did here – is place the evidence in a secure temporary locker, until such time as the evidence can be transferred to the main evidence locker.

Defendant Norwood argued this very issue to the jury, and the jury was unpersuaded, and neither are we. The credibility of this evidence was for the jury to weigh, and they properly did. There is nothing in the record that demonstrates Defendant Norwood has overcome his substantial burden to prevail on a sufficiency of the evidence challenge on this issue.

8

ii.     Sufficiency of the Evidence As A Whole

On his other sufficiency challenge, the collective evidence presented during his trial likewise demonstrates Defendant Norwood cannot meet this heavy burden.

Upon reviewing the record, the officers establishing the chain of custody and the C.I. were subject to cross-examination and Defendant Norwood raised the issues regarding the chain of custody and the C.I.'s credibility in closing argument.  As the State had the burden to prove Defendant Norwood (1) delivered (2) a controlled substance, and taking "all inferences and credibility assessments that the jury might have drawn in favor of the prosecution," Syllabus Point 3, in part, *Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995), we find there was ample proof to sustain the charge.  These credibility determinations were solely for the jury to ascertain.

## B.  Legality of Recidivist Sentence

Defendant Norwood's second assignment of error is that he cannot be sentenced to life imprisonment under our recidivist statute, when his prior felony convictions have not been discharged.  West Virginia Code § 61-11-18 (2000) provides, in pertinent part:

> (c) When it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life.

This Court has previously held that "a circuit court has no jurisdiction to impose an enhanced sentence under the [recidivist] statute where the State fails to prove beyond a reasonable doubt that each penitentiary offense, including the principal penitentiary offense, was *committed subsequent to each preceding conviction and sentence*." Syllabus, in part, *State v. McMannis*, 161 W. Va. 437, 242 S.E.2d 571 (1978)(emphasis added). In other words, to sustain a conviction in a recidivist action, the prosecution must prove that each offense is committed subsequent to each preceding conviction and subsequent to each preceding sentence.

During the recidivist trial, Sergeant Baker testified that both prior felony convictions in Virginia – eluding police and distribution of marijuana – were crimes punishable by confinement in a penitentiary. His testimony establishes Defendant Norwood's first felony conviction and sentence was prior to Defendant Norwood's second felony conviction and sentence. His testimony further established Defendant Norwood's predicate felony conviction — that is, the "principal penitentiary offense" – was committed after his conviction and sentence for the second felony offense. *Id.*

Defendant Norwood argues he was still on probation for both of his prior felony convictions at the time he was convicted and sentenced on the third felony. Because of this fact, Defendant Norwood claims his life sentence under our recidivist statute was illegal. We believe this issue to be one of first impression, and if this Court were to adopt Defendant Norwood's argument, we believe it would further dilute the clear and

10

unambiguous meaning of our recidivist statute. *See State v. Lane*, ___ W. Va. ___, 826 S.E.2d 657 (2019)(Armstead, J., dissenting).

To demonstrate why this argument is meritless, let us hypothetically explore a potential situation: A person is convicted of the felony of armed robbery, and is sentenced to the penitentiary for a determinate term of not less than ten years. *See* W. Va. Code § 61-2-12(a)(1) (2000). This person, while still in the penitentiary serving his sentence, commits the felony of first degree sexual assault. *See* W. Va. Code § 61-8B-3 (2006). He is then convicted of that first degree sexual assault and sentenced to the penitentiary for an indeterminate term of not less than fifteen nor more than thirty-five years, while still serving the sentence for armed robbery. *Id.* Finally, this person commits the felony of malicious wounding, while still in the penitentiary, and while still serving time for the two prior felonies. *See* W. Va. Code 61-2-9(a) (2017). Under Defendant Norwood's theory, a recidivist life sentence flowing from the third violent felony would be improper because that person had not discharged either of his two prior sentences.

We believe this result is not what the Legislature intended in enacting the recidivist statute:

> The primary purpose of our recidivist statutes, W. Va. Code, 61-11-18 (1943), and W. Va. Code, 61-11-19 (1943), is to deter felony offenders, meaning persons who have been convicted and sentenced previously on a penitentiary offense, from committing subsequent felony offenses. The statute is directed at persons who persist in criminality after having been convicted and sentenced once or twice, as the case may be, on a penitentiary offense.

11

Syllabus Point 3, *State v. Jones*, 187 W. Va. 600, 420 S.E.2d 736 (1992). In the hypothetical factual scenario above, there is no doubt that the three-time felon would be deterred from committing future crimes and should remain in a penitentiary for life.

We therefore hold that a criminal defendant who has been twice convicted and sentenced for crimes punishable by confinement in a penitentiary, but has not discharged such prior penitentiary sentences, and is subsequently convicted of a third crime punishable by confinement in a penitentiary, is subject to an enhanced sentence under our recidivist statute, West Virginia Code §§ 61-11-18 (2000) and 61-11-19 (1943).

C. Constitutionality of Recidivist Sentence - Proportionality

The sentencing provisions of our recidivist statute, contained in West Virginia Code § 61-11-18 (2000) are "free from ambiguity [and] its plain meaning is to be accepted and applied without resort to interpretation." Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970). This procedure provides:

> Where an accused is convicted of an offense punishable by confinement in the penitentiary and, after conviction but before sentencing, an information is filed against him setting forth one or more previous felony convictions, if the jury find or, after being duly cautioned, the accused acknowledges in open court that he is the same person named in the conviction or convictions set forth in the information, the court is without authority to impose any sentence other than as prescribed in Code, 61–11–18, as amended.

Syllabus Point 3, *State ex rel. Cobb v. Boles*, 149 W.Va. 365, 141 S.E.2d 59 (1965);

Syllabus Point 3, *State ex rel. Daye v. McBride*, 222 W. Va. 17, 22, 658 S.E.2d 547, 552

12

(2007). Here, the evidence adduced at the recidivist trial conducted under the provisions of West Virginia Code § 61-11-19 (1943), clearly established that Defendant Norwood was previously convicted of two prior felonies. The circuit court, in applying the plain meaning of West Virginia Code § 61-11-18 (2000), correctly sentenced Defendant Norwood to life in the penitentiary.

Further, consistent with the precedents of this Court, Defendant Norwood's life sentence does not violate proportionality principles. Under the provisions of Article III, Section 5, of the West Virginia Constitution, "[p]enalties shall be proportioned to the character and degree of the offence." W. Va. CONST. art. III, § 5. As this Court explained, "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle. . . ." Syllabus Point 8, in part, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980)." This Court has previously held:

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

Syllabus Point 5, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

This Court has also held:

> The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article

13

III, Section 5 [of the West Virginia Constitution], will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.

Syllabus Point 7, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981).

Applying the *Beck* standard to this case, we first look at the final felony offense, delivery of a controlled substance - heroin. The drug transaction itself did not directly result in actual violence. However, due to the nature of the drug transaction, and the drug that was the subject of the transaction, this Court concludes that there was an inherent threat of violence. As for the transaction's nature, Defendant Norwood sold heroin to a C.I., while Defendant Norwood was alone with the C.I. in the C.I.'s car, which contained clandestine audio and video recording devices. Had those recording devices been discovered, or the fact that the C.I. was cooperating with the Task Force been revealed, there would have been a substantial risk of violence to the C.I..

We acknowledge that a majority in this Court's recent opinion in *Lane*, ___ W. Va. ___, 826 S.E.2d 657 (2019), declined to impose a life sentence on proportionality grounds under the recidivist statute where the predicate felony convictions flowed from two counts of delivery of a controlled substance – a total of four Oxycodone pills. In this matter, however, due to the nature of heroin itself, heroin trafficking clearly warrants application of the recidivist statute.

The delivery and ultimate use of heroin carries with it an inherent risk of violence to a person. From the moment of its clandestine creation, heroin is illegal, and is a silent scourge that has saturated our State. The West Virginia Department of Health and Human Resources documents that between 2010 and 2017, 1,086 West Virginians died from heroin overdoses. *See* West Virginia Department of Health and Human Resources, Bureau for Public Health, Health Statistics Center, *FAST STATS – Heroin* (Fall, 2018), http://www.wvdhhr.org/bph/hsc/pubs/other/Heroin_Fast_Facts_2017/Heroin_Fast_Stats_2017.pdf. In fact, in the year 2017 alone – 236 deaths – accounting for 25% of all overdose deaths in the State, were attributed to the abuse of heroin. *Id*.

On the issue of whether heroin carries with it a potential for violence, the circuit court found:

> [The] [c]ourt would also note the inherent danger in the distribution of drugs, and while the [c]ourt was unable to identify any specific cases that have been decided by the Supreme Court of Appeals of this state, finding that distribution of narcotics has a potential for violence, it certainly has a potential for risk of injury and death to persons involved in consuming that product that Mr. Norwood has been convicted of peddling.

This potential for violence has been acknowledged by this Court when it held that those who deliver controlled substances and cause a death can be convicted of felony murder:

> Pursuant to W. Va. Code § 61–2–1 (1991), death resulting from an overdose of a controlled substance as defined in W. Va. Code § 60A–4–401 et seq. and occurring in the commission of or attempt to commit a felony offense of manufacturing or delivering such controlled substance,

15

subjects the manufacturer or deliverer of the controlled substance to the felony murder rule.

Syllabus Point 3, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998); Syllabus Point 12, *State v. Jenkins*, 229 W. Va. 415, 729 S.E.2d 250 (2012). This Court has also upheld a life sentence under our recidivist statute, when all three felony convictions were for delivery of crack cocaine. *See State ex rel. Daye v. McBride*, 222 W. Va. 17, 658 S.E.2d 547 (2007). Finally, the Legislature has recently adopted a new statute, making it a felony to provide a controlled substance to a person which causes death. *See* W. Va. Code § 60A-4-416(a) (2017).

Accordingly, this Court concludes that the delivery and use of heroin carries with it a potential for actual violence to a person.

The second part of our analysis examines the underlying convictions. One of those convictions – evading police – clearly carries with it the risk of violence. Defendant Norwood was convicted of this crime in the Commonwealth of Virginia[3] on

---

[3] Defendant Norwood was convicted of both prior felonies in the Commonwealth of Virginia. This Court has previously held, "[w]hether the conviction of a crime outside of West Virginia may be the basis for application of the West Virginia Habitual Criminal Statute, W. Va. Code, 61-11-18, -19 (1943), depends upon the classification of that crime in this State." Syllabus Point 3, *Justice v. Hedrick*, 177 W. Va. 53, 350 S.E.2d 565 (1986). *See also State v. Lawton*, 125 W. Va. 1, 5, 22 S.E.2d 643, 645 (1942)("It is conceivable that there may be crimes which are punishable by confinement in a penitentiary in other jurisdictions and that the same crimes would be classed as misdemeanors under our laws. In such event, it would seem proper that the law of this State should be considered in determining the grade for the crimes for which there has been a former conviction.").

16

October 28, 2008, when Defendant Norwood entered a plea of guilty. The Virginia statute in effect on February 10, 2008, and under which Defendant Norwood was convicted, provided:

> Any person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person is guilty of a Class 6 felony.

Va. Code Ann. § 46.2-817(B) (2002). An essential element of the Virginia eluding police statute required the Commonwealth to prove, beyond a reasonable doubt, that Defendant Norwood endangered the operation of a law enforcement vehicle or a person.

As the circuit court found:

> [T]he [c]ourt finds that the offense for which the defendant was previously convicted is not just a felony offense, but it does involve a significant risk of danger to the public that is an element of that offense. Essentially[,] the defendant could not have been convicted of that offense if there was not an element of endangerment either to the law enforcement officer vehicle or to any person. Fleeing from an officer is inherently dangerous and presents the same type of risk of violence in the form of a collision that would be presented by an individual under the influence of alcohol, and the Supreme Court of this State has repeatedly found that driving under the influence of alcohol is a sufficient risk or potential for violence as to trigger

---

The trial transcript shows that the circuit court discussed this exact point at length with counsel on the record, even granting a recess which afforded counsel the further opportunity for review. No objection was lodged, and – while the court did not specify what West Virginia felony was analogous to the Virginia evading police statute – the court instructed the jury that both prior Virginia convictions would constitute felonies "for which a penitentiary sentence could be imposed under the laws of the State of West Virginia."

17

– or as to avoid a finding or determination that a life sentence would be cruel or unusual.

Accordingly, based upon the clear meaning of the provisions of the Virginia statute in question, coupled with the findings made by the circuit court, we find that Defendant Norwood's conviction for eluding police carried with it the potential for actual violence.

We agree with the circuit court that both the prior evading police conviction and the predicate conviction for delivery of heroin, which, under our law, "provides the ultimate nexus to the sentence," carried with them the potential for actual violence. Therefore, we conclude that the life sentence under our recidivist statute does not violate proportionality principles.[4] *State v. Miller*, 184 W. Va. 462, 465, 400 S.E.2d 897, 900 (1990)(quoting *Wanstreet*, 166 W. Va. 523, 534, 276 S.E.2d 205, 212 (1981)).

## IV.  CONCLUSION

Finding no error, for the reasons stated above, we affirm.

Affirmed.

---

[4]     We would also note that Defendant Norwood waived the Constitutional challenge to his sentence below.  The colloquy during the sentencing phase, coupled with the language in the circuit court's order of October 10, 2017, demonstrate that waiver.

18