420 S.E.2d 736

STATE of West Virginia, Plaintiff Below, Appellee,

v.

William JONES, Defendant Below, Appellant.

No. 20657.

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1992.

Decided June 26, 1992.

Michael J. Basile, Asst. Atty. Gen., Charleston, for appellee.

William B. Carey, Berkeley Springs, for appellant.

MILLER, Justice:

The defendant, William Jones, appeals his sentence of life imprisonment under our habitual criminal statute, W.Va.Code, 61–11–18 (1943). He raises several assignments of error with regard to his recidivist conviction, but we find no merit in them and, thus, affirm the conviction.

Mr. Jones was convicted by a Morgan County jury of making threats to kidnap and demand ransom under W.Va.Code, 61–2–14c.[1] This conviction arose from an incident in the defendant's home when he held an appliance repairman at gunpoint because the repairman was unable to fix Mr. Jones' stove to his satisfaction.[2]

Following the jury verdict, the prosecutor filed an habitual offender information, citing four prior convictions for crimes committed under the name of William McGurgan: (1) a 1974 conviction in the United States District Court for the Northern District of Virginia for possession of a firearm by a felon; (2) a 1977 conviction in the Circuit Court of King George County,

---

1. W.Va.Code, 61–2–14c, states:

"If any person, with intent to extort from any other person any ransom, money or other thing, or any concession or advantage of any sort, shall, by speech, writing, printing, drawing or any other method or means of communication, directly or indirectly threaten to take away forcibly or by stealth or otherwise kidnap any person, or shall directly or indirectly demand, orally or in writing, or by any other method or means of communication, any ransom, money or other thing, or any concession or advantage of any sort, on a threat to take away forcibly or by stealth or otherwise kidnap any person, he shall be guilty of a felony, and, upon conviction, shall be punished with confinement in the penitentiary for any term of years not less than five."

2. We refused Mr. Jones' application for an appeal from his conviction under W.Va.Code, 61–2–14c.

Virginia, for grand larceny; (3) a 1980 conviction in the Circuit Court of Fairfax County, Virginia, for burglary, and (4) a 1981 conviction in the Circuit Court of Fairfax County, Virginia, for grand larceny.

The jury found that Mr. Jones was the same person as William McGurgan, who was convicted of grand larceny in 1977, burglary in 1980, and grand larceny in 1981.[3] As a result, Mr. Jones was sentenced to life imprisonment as an habitual offender.

## I.

As his first assignment of error, Mr. Jones contends that his 1977 conviction for grand larceny was too remote in time to serve as the basis for the recidivist sentence. We note initially our traditional rule with regard to recidivist proceedings, which is stated in Syllabus Point 2 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981):

" 'Habitual criminal proceedings providing for enhanced or additional punishment on proof of one or more prior convictions are wholly statutory. In such proceedings, a court has no inherent or common law power or jurisdiction. Being in derogation of the common law, such statutes are generally held to require a strict construction in favor of the prisoner.' *State ex rel. Ringer v. Boles*, 151 W.Va. 864, 871, 157 S.E.2d 554, 558 (1967)."

Our statute makes no mention of a time limitation on the use of prior convictions.

W.Va.Code, 61–11–18, states simply that a life sentence shall be imposed "[w]hen it is determined ... that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary[.]"[4]

We are cited *State v. Miller*, 184 W.Va. 462, 400 S.E.2d 897 (1990), for the proposition that a series of felonies occurring over a twenty-five year period is not within the contemplation of the drafters of the statute. In that case, however, the reversal of the life sentence was based upon the nature of the crimes, not the span of time between them. The Court merely noted that, in addition to the nonviolent nature of the underlying felonies, a significant amount of time had passed between the initial offense and the offense which triggered the recidivist proceeding.

Although we have not had occasion to address this issue, we have upheld the imposition of recidivist life sentences in cases where the prior convictions had occurred over longer time periods than the eleven-year-period involved here. *See, e.g., State v. Housden*, 184 W.Va. 171, 399 S.E.2d 882 (1990) (twenty-year time period); *State v. Oxier*, 179 W.Va. 431, 369 S.E.2d 866 (1988) (seventeen-year time period).

The general rule appears to be that in the absence of any provision in the habitual criminal or recidivist statutes, the remoteness of the prior conviction sought to be used in a recidivist trial need not be considered.[5] *See, e.g., Palmer v. State,*

---

**3.** Apparently, the 1974 conviction was not considered at the trial.

**4.** The text of W.Va.Code, 61–11–18, is:

"When any person is convicted of an offense and is subject to confinement in the penitentiary therefor, and it is determined, as provided in section nineteen [§ 61–11–19] of this article, that such person had been before convicted in the United States of a crime punishable by imprisonment in a penitentiary, the court shall, if the sentence to be imposed is for a definite term of years, add five years to the time for which the person is or would be otherwise sentenced. Whenever in such case the court imposes an indeterminate sentence, five years shall be added to the maximum term of imprisonment otherwise provided for under such sentence.

"When it is determined, as provided in section nineteen hereof, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the penitentiary for life."

W.Va.Code, 61–11–19 (1943), sets out the procedural provisions for trial of a recidivist or habitual criminal charge.

**5.** Some states have statutory provisions that limit the use of prior convictions after a specified period. *See, e.g., State v. Van Winkle*, 149 Ariz. 469, 719 P.2d 1085 (App.1986); *Allen v. State*, 487 So.2d 410 (Fla.App.1986); *People v. Robinson*, 89 Ill.2d 469, 60 Ill.Dec. 632, 433 N.E.2d 674 (1982); *Commonwealth v. Carter*, 353 Pa.Super. 203, 509 A.2d 407 (1986).

199 Kan. 73, 427 P.2d 492 (1967); *Pace v. State*, 407 So.2d 530 (Miss.1981); *State v. Bevelle*, 527 S.W.2d 657 (Mo.App.1975); *Hicks v. State*, 545 S.W.2d 805 (Tex.Crim. App.1977). *Cf. Wise v. State*, 272 Ind. 498, 400 N.E.2d 114 (1980) (statute of limitations on prior felony has no bearing on use of the conviction for recidivist purposes). *See generally* 39 Am.Jur.2d *Habitual Criminals & Subsequent Offenders* § 6 (1968).

■ Common sense would dictate that the age of a prior conviction should have little bearing in a recidivist proceeding, when the underlying purpose of the statute is considered. In speaking of the purpose of our recidivist statute in *State v. McMannis*, 161 W.Va. 437, 441, 242 S.E.2d 571, 574–75 (1978), we said:

> "The teaching of our case law is that the primary purpose of the statute is to deter felony offenders, meaning persons who have been convicted and sentenced previously on a penitentiary offense, from committing subsequent felony offenses. The statute is directed at persons who persist in criminality after having been convicted and sentenced once or twice, as the case may be, on a penitentiary offense." (Footnote omitted).

*See also State v. Stover*, 179 W.Va. 338, 368 S.E.2d 308 (1988); *State v. Adkins*, 168 W.Va. 330, 284 S.E.2d 619 (1981).

Obviously, when the life recidivist statute is invoked, the defendant will have at least two prior felony convictions. If they are serious felonies, the defendant will have served lengthy prison sentences. This means that at the time of the life recidivist trial, one or more of the earlier convictions may be rather old. Yet, the deterrent purpose of the recidivist statute would hardly be served if earlier felony convictions could be excluded because of their ages.

## II.

■ The second assignment of error also involves a construction of our recidivist statute. Mr. Jones contends that it was improper for the sentencing judge to impose a life sentence because Mr. Jones had not first received an initial sentence enhancement of five years.

There is no requirement under our recidivist statute, W.Va.Code, 61–11–18, that before a life recidivist proceeding can be invoked, the State must have utilized its five-year enhancement proceeding.[6] This latter proceeding is available when a defendant is convicted of a felony and has one prior felony conviction. If this procedure is successfully invoked, a five-year sentence enhancement may then be added to the sentence for the second felony conviction.

Moreover, the procedural section of our recidivist statute, W.Va.Code, 61–11–19 (1943),[7] contains no clear guidance on this point. Indeed, it might be said that because this section applies to both the five-year enhancement procedure and the life recidivist procedure, there was no intent on

6. See note 4 for the applicable text of W.Va. Code, 61–11–18.

7. The relevant portion of W.Va.Code, 61–11–19, is:

"It shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentiary of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon conviction and before sentence. Said court shall, before expiration of the term at which such person was convicted, cause such person or prisoner to be brought before it, and upon an information filed by the prosecuting attorney, setting forth the records of conviction and sentence, or convictions and sentences, as the case may be, and alleging the identity of the prisoner with the person named in each, shall require the prisoner to say whether he is the same person or not. If he says he is not, or remains silent, his plea, or the fact of his silence, shall be entered of record, and a jury shall be impanelled to inquire whether the prisoner is the same person mentioned in the several records. If the jury finds that he is not the same person, he shall be sentenced upon the charge of which he was convicted as provided by law; but if they find that he is the same, or after being duly cautioned if he acknowledged in open court that he is the same person, the court shall sentence him to such further confinement as is prescribed by section eighteen [§ 61–11–18] of this article on a second or third conviction as the case may be."

the part of the legislature to make a conviction for recidivism carrying a five-year sentence enhancement a predicate to imposition of a life sentence for recidivism.

The defendant's argument that the five-year enhancement is a necessary predicate to imposition of the life recidivist sentence is analogous to the argument rejected in *Martin v. Leverette,* 161 W.Va. 547, 244 S.E.2d 39 (1978). There, the defendant contended that the State had been selective in its use of the recidivist statute. After reviewing the decision of the United States Supreme Court and other jurisdictions, we concluded in Syllabus Point 3 of *Martin:*

> "Selective enforcement by a prosecutor of the habitual criminal statute, W.Va. Code, 61–11–18, and the enhanced sentence provided thereunder, are not *per se* violative of the Equal Protection or Cruel and Unusual Punishment Clauses of the West Virginia or the United States Constitutions."

Finally, from a practical standpoint, it would appear that the failure to impose the initial five-year recidivist enhancement benefits the defendant by avoiding an increased punishment. Consequently, we conclude that in the absence of a statute to the contrary, a life recidivist proceeding is not conditioned on the State's prior utilization of the five-year recidivist enhancement provision.

### III.

As his third assignment of error, Mr. Jones asserts that the imposition of a life recidivist sentence on the basis of the subject felonies violates the proportionality doctrine. We disagree.

We discussed our proportionality principle for a criminal sentence in *State v. Housden,* 184 W.Va. 171, 399 S.E.2d 882 (1990), making this general point in Syllabus Point 1 as to its constitutional origin:

> " 'Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality

principle: "Penalties shall be proportioned to the character and degree of the offence." ' Syl. Pt. 8, *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980)."

We went on in *Housden* to elaborate some guidelines for applying our constitutional proportionality principle and summarized them in Syllabus Point 2:

> " 'The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5 [of the West Virginia Constitution], will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.' Syl. Pt. 7, *State v. Beck,* 167 W.Va. 830, 286 S.E.2d 234 (1981)."

Applying the above standard to this case, we look first at the triggering offense, making threats to kidnap or demanding ransom. Although the incident involved no physical harm to the victim, there was most certainly the threat of violence. Mr. Jones had two firearms in his possession when he told the repairman, as well as an employee at a nearby Sears store, that he would kill the repairman unless a new stove was delivered to his residence that evening. Although the repairman was able to escape, thus avoiding harm, this does not alter the violent nature of the crime.

The underlying convictions of burglary and grand larceny are likewise adequate to sustain the sentence. We have previously held similar records of past convictions to be proper bases for imposition of recidivist life sentences. *See State v. Housden, supra; State v. Oxier,* 179 W.Va. 431, 369 S.E.2d 866 (1988).

### IV.

Mr. Jones next claims that his 1977 conviction for grand larceny in King

George County, Virginia, was unconstitutional and could not be the basis for a recidivist sentence. He maintains that he was denied a jury trial, allegedly because his attorney, without his knowledge, relinquished his right to a jury. He also claims that he received ineffective assistance of counsel, in part, because his attorney was not prepared at trial. We recognized in Syllabus Point 1 of *Housden v. Leverette*, 161 W.Va. 324, 241 S.E.2d 810 (1978), that a prior conviction can be attacked for recidivist purposes if counsel was appointed so late at the original criminal trial as to raise a presumption that the counsel was ineffective:

> "An interval of one day or less between the appointment of counsel and trial or the entry of a guilty plea raises a rebuttable presumption that the defendant was denied effective assistance of counsel and shifts the burden of persuasion to the state."

*See also State v. Barlow*, 181 W.Va. 565, 383 S.E.2d 530 (1989).

Our review of the record of the King George County conviction introduced at the recidivist trial reveals no denial of Mr. Jones' rights. Counsel was appointed for Mr. Jones on July 20, 1977. A preliminary hearing was held on August 3, 1977, at which he was represented by an attorney privately hired for him.[8] At his trial on December 9, 1977, Mr. Jones signed a form indicating that he had been advised of his rights regarding a plea and a jury trial. He then pleaded not guilty and requested a bench trial. At the trial, his attorney zealously argued his case. We find no denial of a constitutional right to have occurred in that proceeding.

## V.

■ Mr. Jones' fifth assignment of error is that the trial court erroneously allowed the prosecution to present evidence of three prior convictions, when the recidivist statute required evidence of only two. We are cited no authority for his position.

There is no specific language in our recidivist statutes dealing with this question.[9] In *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), we discussed some of the procedural aspects of a recidivist trial. We pointed out that it "is not simply a sentencing hearing, but a proceeding whereby a new criminal status, that of being an habitual criminal, is determined." 164 W.Va. at 225, 262 S.E.2d at 429. We also observed that "due process protection [attends] recidivist proceedings," 164 W.Va. at 225, 262 S.E.2d at 429, and concluded with this statement in Syllabus Point 4 of *Vance:*

> "Where the issue of identity is contested in an habitual criminal proceeding, the State must prove identity beyond a reasonable doubt."

*See also State v. Barlow, supra.*

■ The State, of course, bears the burden of proof in a recidivist trial. For this reason, the State may desire to allege more than two prior felony convictions to support its request for life recidivism in order to ensure that it will be able to properly prove at least two prior felony convictions. In the present case, as earlier noted, the recidivist information contained four prior felony convictions. At trial, the State, for reasons not apparent on the record, offered no proof as to the 1974 federal district court conviction.

It would seem an undue restriction on the prosecution's recidivist case to require that an election be made in advance of trial as to the two precise convictions upon which the State intends to rely. If the prosecutor's proof fails as to one of them, there is a failure to prove the habitual criminal status, precluding the life recidivist conviction.

It must be remembered that there is no additional penalty on a life recidivist conviction if more than two prior felony convictions are shown. Here, the jury was required in its verdict to find the defendant guilty of each of the prior felony convictions, thus eliminating any confusion that

---

**8.** It appears that appointed counsel was officially relieved on August 24, 1977.

**9.** For the applicable text of our recidivist statutes, see notes 4 and 7, *supra.*

might occur under a general verdict. *See Waye v. State,* 583 N.E.2d 733 (Ind.1991).

In those several jurisdictions where the issue has been raised that more than the statutory number of prior convictions have been proved at the recidivist trial, the rule generally is that the excess proof is surplusage and does not affect the validity of the life recidivist conviction. *See, e.g., State v. Daley,* 147 Conn. 506, 163 A.2d 112, *cert. denied,* 364 U.S. 887, 81 S.Ct. 178, 5 L.Ed.2d 107 (1960); *Golden v. State,* 485 N.E.2d 51 (Ind.1985); *Adams v. State,* 642 S.W.2d 211 (Tex.App.1982). We find no merit in this assignment of error.[10]

For the foregoing reasons, we find no reversible error and, therefore, affirm the judgment of the Circuit Court of Morgan County.

Affirmed.

---

10. We also find no merit in the defendant's final two assignments. The first is that the State, under a plea bargain that was never consummated, had indicated that it would seek only a five-year enhancement rather than a life recidi-

vist conviction. The second relates to the claim that the prior felony convictions were dissimilar in nature and, therefore, not subject to recidivist treatment.