# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-1086** (Preston County 18-F-15)

**George Elmer Dumire,**
**Defendant Below, Petitioner**

**FILED**
**December 16, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner George Elmer Dumire, by counsel Belinda A. Haynie, appeals the Circuit Court of Preston County's April 10, 2019, conviction order and the November 5, 2019, sentencing order. Respondent the State of West Virginia, by counsel Scott E. Johnson, filed a response in support of the circuit court's orders. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted by a Preston County grand jury on March 7, 2018, on six counts: (1) delivery of a controlled substance within 1000 feet of a school in violation of West Virginia Code § 60A-4-401(a)(i) and West Virginia Code § 60A-4-406(a)(2); (2) delivery of a controlled substance in violation of West Virginia Code § 60A-4-401(a); (3) aiding and abetting in the delivery of a controlled substance in violation of West Virginia Code § 60A-4-401(a)(i); (4) child neglect creating a substantial risk of serious bodily injury in violation of West Virginia Code § 61-8D-4(c); (5) aiding and abetting in the delivery of a controlled substance in violation of West Virginia Code § 60A-4-401(a)(i); and (6) child neglect creating substantial risk of serious injury in violation of West Virginia Code § 61-8D-4(c). These charges stemmed from drug crimes that occurred between August of 2017 and January of 2018.

The indictment provided that petitioner sold controlled substances to a confidential informant. These controlled buys were videoed pursuant to several Electronic Intercept Orders ("EIO") obtained by Deputy Powley, of the Preston County Sheriff's Department. Prior to trial, petitioner filed a motion to suppress evidence of the controlled buys, arguing that the EIO

1

applications lacked probable cause. The circuit court conducted a July 20, 2018, hearing, and entered an order on October 24, 2018, which granted in part and denied in part, petitioner's motion to suppress. Specifically, the court concluded that a drug sale between petitioner and confidential informant M.M., on August 9, 2017, took place outside of petitioner's home so Deputy Powley did not need an EIO to record that criminal transaction and, therefore, it was admissible. However, the court concluded that the State's recording of the August 17, 2017, transaction was inadmissible. The circuit court found that an October 25, 2017, EIO application contained sufficient information to justify a finding of probable cause so that recording was admissible. Finally, the circuit court concluded there was probable cause for a January 9, 2018, EIO "based upon [Deputy Powley's] prior knowledge and observation of [petitioner's] alleged drug activity via the use of a confidential informant on several prior occasions."

A two-day trial was held in March of 2019. At trial, Deputy Powley testified that M.M. told the officer that M.M. could make purchases of controlled substances from petitioner. Based upon that information, Deputy Powley entered into a confidential informant contract with M.M. M.M. set up a purchase of three 10 mg Percocet tablets from petitioner on August 9, 2017, and he effected the purchase within 1,000 feet of Kingwood Elementary School. Later, on August 17, 2017, M.M. arranged to buy five 5 mg Percocet tablets from petitioner. On October 25, 2017, M.M. arranged to buy five 10 mg Percocet tablets from petitioner; this exchange occurred between M.M. and petitioner's seventeen-year-old daughter, H.D. Finally, on January 9, 2018, M.M. purchased four 10 mg Percocet tablets, but the pills were delivered to M.M. by T.D., petitioner's twelve-year-old son.[1]

At trial, M.M. testified that he had known petitioner for a decade and had purchased drugs from him throughout that time, roughly three to five times per week.[2] M.M. testified consistent with Deputy Powley as to the controlled purchases noted above. With regard to the purchase on October 25, 2017, M.M. testified that, although petitioner's daughter delivered the substance, this

---

[1] At trial, the State also called a West Virginia State Police chemist who testified that the pills obtained from petitioner or his children were Schedule II controlled substances.

[2] Petitioner called two witnesses in an attempt to impugn the integrity of M.M. and to suggest that M.M. was not qualified to serve as a confidential informant. M.M.'s probation officer, Kerry Ann Patton ("Ms. Patton"), testified that M.M. was not compliant with his probation. She testified that M.M. had multiple positive drug screens with the probation office, admitted he had a substance abuse problem, and was placed in the Community Corrections Program. In addition, Ms. Patton testified that she filed two probation revocation requests for M.M. on February 22 and July 26, 2017, and she referred M.M. to drug court. Importantly, she testified that while participants are on probation or in the drug court program they are not permitted to work as a confidential informant. Petitioner also called Cherity Shahan ("Ms. Shahan"), the drug court probation officer for the Eighteenth Judicial Circuit. Consistent with Ms. Patton's testimony, Ms. Shahan testified that participants in the drug court program are not allowed to serve as a confidential informant. Per Ms. Shahan, she made a request to terminate M.M. from the drug court program, his participation was terminated, and his probation was ultimately revoked. We presume that the jury gave this testimony the weight they thought it deserved.

exchange was the result of a deal that he had arranged with petitioner. Likewise, M.M. testified that, while the pills were delivered by petitioner's son on January 9, 2018, he had made arrangements with petitioner to purchase the pills from petitioner.

During closing arguments, over the objection of petitioner's counsel, the circuit court gave the State's proposed jury instruction number ten as follows:

> The Court further instructs the jury in drug-related offenses, the infiltration of drug related offenses, the infiltration of drug operations and limited participation in their unlawful practice by law enforcement personnel is a recognized and permissible means of detention and apprehension.

The jury convicted petitioner of delivery of a controlled substance within 1,000 feet of a school (count 1); delivery of a controlled substance (count 2); aiding and abetting in the delivery of a controlled substance (count 3); and aiding and abetting in the delivery of a controlled substance (count 5). However, the jury acquitted petitioner of the charge of child neglect creating a substantial risk of serious bodily injury (count 4) and found petitioner guilty of child neglect creating a substantial risk of bodily injury, a lesser included offense of child neglect creating a substantial risk of serious injury in violation of West Virginia Code § 61-8D-4(c) (count 6).

The State filed a recidivist information against petitioner. The recidivist jury returned a verdict against petitioner finding that petitioner had previously been convicted of first-degree manslaughter, grand larceny after a former conviction of a felony,[3] and burglary.[4] By order entered on November 5, 2019, the circuit court imposed a life sentence on petitioner as a habitual offender under count 1 of the indictment. The circuit court imposed an indeterminate one-to-fifteen year sentence of incarceration on count 2 to run consecutively to count 1. As to count 3, the circuit court imposed an indeterminate one-to-fifteen year sentence of incarceration to be served consecutively to count 2. As to count 5, the circuit court imposed an indeterminate one-to-fifteen year sentence of incarceration to run consecutively to count 3. As to count 6, the circuit court imposed a six month sentence of incarceration to run concurrently with count 5. The circuit court also assessed the costs of the proceedings to petitioner. Petitioner appealed.

On appeal, petitioner raises five assignments of error. First, petitioner maintains that the lower court erred when it denied his motion to suppress videotapes of the controlled buys, which petitioner claims were obtained in violation of Article III, § 6 of the West Virginia Constitution and West Virginia Code § 62-1F-1 to -9. Next, petitioner asserts that the lower court erred when it gave the State's proposed jury instruction number ten. Petitioner further complains that he was deprived of a fair trial because the prosecutor made improper remarks during closing arguments. Additionally, petitioner maintains that the imposition of a life sentence pursuant to West Virginia Code § 61-11-18(c) violates the proportionality clause of Article III, § 5 of the West Virginia Constitution. Finally, petitioner argues that he was denied a fair trial because of cumulative error

---

[3] Both this conviction and the manslaughter conviction stemmed from criminal conduct in Oklahoma.

[4] This prior conviction stemmed from criminal conduct in Preston County, West Virginia.

3

that occurred during the course of the trial. We will address each of these assignments of error separately below.

Initially, petitioner asserts that the circuit court should have suppressed the audio/video recordings of the drug transactions on October 25, 2017, and January 9, 2018, because the State failed to prove probable cause when it obtained the EIOs. The State, however, maintains that the applications for the EIOs that were used to obtain the recordings contained a sufficient showing of probable cause and indicia of reliability as to the informant. As addressed below, we agree with the State.

> On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference.

Syl. Pt. 3, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994).

We recently considered a matter involving electronic interception and reaffirmed our prior holding that "[e]lectronic interception by law enforcement authorities of a person's conduct or oral communications in his or her home is governed by W.Va. Code §§ 62-1F-1 to -9." Syl. Pt. 1, *State v. Howells*, 243 W. Va. 1, 842 S.E.2d 205 (2020) (citation omitted).[5]

Moreover, it is well established that

> [u]nder the Fourth Amendment to the United States Constitution and Article III, Section 6 of the West Virginia Constitution, the validity of an affidavit for a search warrant is to be judged by the totality of the information contained in it. Under this rule, a conclusory affidavit is not acceptable nor is an affidavit based on hearsay acceptable unless there is a substantial basis for crediting the hearsay set out in the affidavit which can include the corroborative efforts of police officers.

---

[5] In *Howells*, we found that a law enforcement officer can engage in electronic interception of conduct or oral communications prior to obtaining an EIO in limited circumstances. Specifically, we held:

> A law enforcement officer may not engage in electronic interception of conduct or oral communications in a person's home without first obtaining an order authorizing that interception unless, pursuant to W.Va. Code § 62-1F-9 (2007), the officer can establish: (1) a situation exists such that an order authorizing such interception cannot with due diligence be obtained; (2) a factual basis for issuance of an order exists; and (3) it is determined that exigent circumstances exist which prevent the submission of an application for an order to a court.

*Howells*, 243 W. Va. at --, 842 S.E.2d at 206, syl. pt. 2.

Syl. Pt. 4, *State v. Adkins*, 176 W. Va. 613, 346 S.E.2d 762 (1986). However, quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983), we have also explained

> that after-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' *Spinelli [v. United States],* 393 U.S. [410], 419, 89 S.Ct. [584], 590 [21 L.Ed.2d 637 (1969) ]. 'A grudging or negative attitude by reviewing courts toward warrants,'*[United States v.] Ventresca,* 380 U.S. [102], 108, 85 S.Ct. [741], 745, [13 L.Ed.2d 684 (1965) ] is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' *Id.,* at 109, 85 S.Ct., at 746.

*State v. Thomas*, 187 W. Va. 686, 694, 421 S.E.2d 227, 235 (1992).

Petitioner argues that the circuit court erred in finding that the applications supporting the EIOs for the drug transactions of October 25, 2017, and January 9, 2018, showed probable cause. On October 25, 2017, Deputy Powley swore that:

> On or about October 25, 2017, in Preston County, and prior to the submission of this application, Deputy R.L. Powley made arrangements to meet with a confidential informant. The scope of the meeting is to make preparations for the informant to arrive at the DUMIRE residence and once there purchase acetaminophen/oxycodone with documented cash. The upcoming transaction will be under the direction and supervision of the Preston County Narcotics Unit. The controlled buy is part of an ongoing investigation into Dumire's sale of controlled substances.

> The affiant anticipates the type of conduct or communications to be intercepted will directly provide evidence to the possession, manufacturing, use, or delivery of controlled substances.

> The affiant knows from training and experience that persons involved in the possession, manufacturing, use, or delivery of controlled substances frequently repeat the conduct. Therefore, the affiant respectfully request the order not automatically terminate when the conduct communication has been first intercepted.

> The affiant respectfully requests the need to obtain, secure, preserve and examine and/or further test any evidence found and recovered from the residence.

The magistrate issued the October 25, 2017, EIO "[b]ased upon the prior contact between the confidential informant and the [petitioner] during his ongoing investigation[.]" The magistrate found probable cause to issue the January 9, 2018, EIO in reliance on a similar affidavit and on

Deputy Powley's "prior knowledge and observation of [petitioner's] alleged drug activity via the use of a confidential informant on several prior occasions." Here, the circuit court found that the EIO applications contained sufficient showings of probable cause. Affording deference to the circuit court's findings with respect to the sufficiency of the affidavits we refuse to disturb the circuit court's decision to not suppress the audio/video recordings of the October 25, 2017, and January 9, 2018, drug purchases.

Next, petitioner contends that the circuit court provided an improper jury instruction concerning the use of a confidential informant by law enforcement. The State maintains that the instruction was appropriate and petitioner's assignment of error is merely an attempt by petitioner to denigrate the legitimacy of a confidential informant.

"[W]hen reviewing a challenge to jury instructions, we consider the instructions given as a whole and not in isolation to determine whether the instructions adequately state the law and provide the jury with an ample understanding of the issues and the controlling principles of law. *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995)." *State v. LaRock*, 196 W. Va. 294, 308, 470 S.E.2d 613, 627 (1996). Further, "[w]hen called upon to review a trial court's rejection or acceptance of a specific jury instruction, this Court generally applies an abuse of discretion standard." *State v. McGuire*, 200 W. Va. 823, 828, 490 S.E.2d 912, 917 (1997). In addition, this Court has long relied upon the principle that "'[i]nstructions must be based upon the evidence and an instruction which is not supported by evidence should not be given." Syl. Pt. 4, *State v. Collins*, 154 W. Va. 771, 180 S.E.2d 54 (1971).

Notably, in *State v. Dameron*, 172 W. Va. 186, 188, 304 S.E.2d 339, 341-42 (1983), this Court upheld an instruction that is nearly identical to the instruction at issue in this matter. In *Dameron*, the circuit court instructed the jury as follows: "[t]he Court further instructs the jury that in drug-related offenses the infiltration of drug operations and limited participation in their unlawful practices by law enforcement personnel is a recognized and permissible means of detection and apprehension." *Id.* In *Dameron*, we noted that "[t]he State was entitled to explain a police officer's role in a drug investigation. And although the instruction indirectly went to the credibility of Trooper Hylton as a witness, it did not improperly direct the jury to give extra weight to the trooper's testimony[.]" *Id.* at 188, 304 S.E.2d at 342. Reviewing instruction number ten in light of our established precedent, we find that it was not an abuse of discretion for the circuit court to provide this instruction to the jury.

Petitioner further complains that the State made an improper remark during closing arguments when it encouraged the jury to find petitioner guilty in an effort to help solve the opioid crisis. The State maintains that after petitioner objected to this remark the circuit court gave a curative instructive and petitioner's counsel indicated her satisfaction with the curative instruction. Further, inasmuch as petitioner's counsel did not ask for a mistrial, the State asserts that petitioner waived this argument. We agree with the State.

Although we find that petitioner waived any objection as to the prosecutor's remarks by indicating his satisfaction with the curative instruction given by the circuit court and by failing to move for a mistrial, we do not believe that the isolated remark by the State is sufficient to set aside petitioner's conviction. We have held that "[a] judgment of conviction will not be set aside because

of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995). In *Sugg*, this Court established a four-part test to examine whether a prosecutor's comments require reversal.

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

193 W. Va. at 393, 456 S.E.2d at 474, syl. pt. 6.

Applying the factors in *Sugg*, we do not believe that the single comment by the prosecutor in this case is so damaging as to require reversal. Here, the comment was isolated and did not have a tendency to mislead the jury. Moreover, the evidence was sufficiently strong so as to establish petitioner's guilt. Additionally, there is no evidence to suggest that the State's remark was deliberately made to divert attention to extraneous matters.

Next, petitioner maintains that the imposition of a life sentence pursuant to West Virginia Code § 61-11-18(c) violates the proportionality clause of Article III, § 5 of the West Virginia Constitution. As noted above, the recidivist jury found that petitioner had been convicted of first-degree manslaughter, grand larceny after a former conviction of a felony, and burglary. Petitioner argues that the imposition of a life sentence pursuant to West Virginia Code § 61-11-18(c) violates the proportionality clause of article 3, § 5 of the West Virginia Constitution. The State asserts that petitioner's triggering and predicate offenses were violent or involved the potential for violence or harm, and, therefore, the circuit court properly imposed a recidivist life sentence. For the reasons addressed below, this assignment of error fails.

Initially, petitioner argues that his manslaughter and burglary convictions are not of recent vintage. We have held, however, that the remoteness of a conviction is irrelevant, finding "[i]n the absence of any provision in the habitual criminal or recidivist statutes, W. Va. Code, 61-11-18 (1943), and W. Va. Code 61-11-19 (1943), the remoteness of the prior convictions sought to be used in a recidivist trial need not be considered." Syl. Pt. 2, *State v. Jones*, 187 W. Va. 600, 420 S.E.2d 736 (1992). Further, petitioner argues that delivering a controlled substance within 1,000 feet of a school was not a violent offense. However, the offense of selling drugs within 1,000 feet of a school aims to protect children, a vulnerable population, and therefore this matter is distinguishable from a simple drug crime.

Recidivist statutes are designed "to deter felony offenders, meaning persons who have been convicted and sentenced previously on a penitentiary offense from committing subsequent felony offenses." Syl. Pt. 3, in part, *State ex rel. Appleby v. Recht*, 213 W. Va. 503, 583 S.E.2d 800 (2002) (citation omitted). We recently discussed the proportionality clause in the context of a life recidivist conviction in *State v. Hoyle*, where we held:

[f]or purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c), two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

Syl. Pt. 12, *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019).

This Court has determined that a sentence cannot be enhanced unless the triggering (most recent) offense and at least one of the predicate offenses involved "actual or threatened" violence. In this case, the recidivist jury found that petitioner had been convicted of first-degree manslaughter, among other convictions. It is axiomatic that manslaughter is a violent crime. Further, petitioner's triggering offense of delivering a controlled substance within 1,000 feet of a school creates the threat of violence. Accordingly, we find that the circuit court did not err in finding that petitioner's life recidivist conviction was not an unconstitutionally disproportionate punishment.

Finally, petitioner claims that he was denied a fair trial due to cumulative error. In support of this assignment, petitioner delineates several items which he claims contributed to this cumulative error, but he merely presents in bullet-point form the proposed error and does not adequately brief this issue, contrary to the requirements of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. We have noted that this type of skeletal argument does not preserve a claim. *State, Dept. of Health v. Robert Morris N.,* 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) (citation omitted). Notwithstanding, inasmuch as we have found that there was no error from the trial court, we are not persuaded by petitioner's argument that he was denied a fair trial due to cumulative error. As we noted in *State v. Trail*, 236 W. Va. 167, 188 n.31, 778 S.E.2d 616, 637 n.31 (2015), the cumulative error doctrine has no application when there is no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** December 16, 2020

**CONCURRED IN BY:**

Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**CONCURRING BUT WRITING SEPARATELY:**

Chief Justice Armstead, concurring**:**

I concur with the majority's decision insofar as it upholds the circuit court's conviction and sentencing order. However, I write separately to address the majority's discussion regarding the imposition of a recidivist life sentence. I generally agree with the finding within the decision that, *applying the test set forth in State v. Hoyle, 242 W. Va. 599, 836 S.E.2d 817 (2019)*, the recidivist conviction "was not an unconstitutionally disproportionate punishment." However, I write separately because I believe that the imposition of the recidivist life sentence in this case is proper pursuant to the clear language of the recidivist statute, separate and apart from the test established in *Hoyle.*

West Virginia Code § 61-11-18 (2000) provides, in pertinent part:

> (c) When it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life.

This statute is clear and unambiguous. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951).

Over the past four decades, this Court has issued a number of opinions imposing additional requirements, none of which are included in the express language of the recidivist statute, that must be met for a court to impose a recidivist life sentence. Beginning with this Court's decision in *Wanstreet v. Bordernkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981), this Court has attempted to reconcile its apparent concern that application of the statute as written is unconstitutional with its desire to step into the shoes of the Legislature and "fix" the statute. In so doing, it has essentially "legislated from the bench" with varying, and often inconsistent, results.

The majority decision in this case concludes that petitioner's sentence must be upheld. I agree. I further agree that the facts in this case meet the *Hoyle* standard. However, I believe the Petitioner's conviction should be upheld based on a clear reading of the statute. In the case before us, the State filed a Recidivist Information against petitioner following petitioner's convictions for delivery of a controlled substance within 1,000 feet of a school; delivery of a controlled substance; aiding and abetting in the delivery of a controlled substance (2 counts); and child neglect creating a substantial risk of bodily injury. A jury returned a verdict against petitioner in the recidivist matter, finding that he had previously been convicted of the following: first-degree manslaughter, grand larceny after a former conviction of a felony, and burglary. Under the statute, these facts alone warrant imposition of the recidivist life sentence.

Accordingly, I concur in the Court's decision affirming petitioner's sentence for the reasons stated in this separate opinion.