IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0532
_____

FILED
April 10, 2023
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

ADONNE A. HORTON,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Marion County
Honorable David R. Janes, Judge
Criminal Action No. CC-24-2017-F-147

AFFIRMED
_____

Submitted: March 22, 2023
Filed: April 10, 2023

Gary A. Collias, Esq.
Public Defender Services
Charleston, West Virginia
Attorney for Petitioner

Patrick Morrisey, Esq.
Attorney General
Andrea Neese-Proper, Esq.
Assistant Attorney General
Mary Beth Niday, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.　"'The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the statute.' Syllabus Point 7, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981)." Syl. Pt. 11, *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019).

2.　"'Under Ex post facto principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him.' Syl. Pt. 1, *Adkins v. Bordenkircher*, 164 W.Va. 292, 262 S.E.2d 885 (1980)." Syl. Pt. 5, *Frazier v. McCabe*, 244 W. Va. 21, 851 S.E.2d 100 (2020).

3.　"The statutory penalty in effect at that time of the defendant's criminal conduct shall be applied to the defendant's conviction(s)." Syl. Pt. 13, in part, *State v. Shingleton*, 237 W. Va. 669, 790 S.E.2d 505 (2016), *superseded by statute on other grounds, as stated in State v. Sites*, 241 W. Va. 430, 825 S.E.2d 758 (2019).

i

4. "In the absence of any provision in the habitual criminal or recidivist statutes, W.Va. Code, 61-11-18 (1943), and W.Va. Code, 61-11-19 (1943), the remoteness of the prior convictions sought to be used in a recidivist trial need not be considered." Syl. Pt. 2, *State v. Jones*, 187 W. Va. 600, 420 S.E.2d 736 (1992).

5. "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Syl. Pt. 8, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980).

6. "While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. Pt. 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

7. "For purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c) [(2000)], two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution." Syl. Pt. 12, *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019).

ii

**HUTCHISON, Justice:**

The petitioner, Adonne A. Horton, appeals the June 7, 2021, order of the Circuit Court of Marion County sentencing him to life in prison pursuant to the habitual criminal statute, West Virginia Code § 61-11-18.[1] The triggering offense for the petitioner's life recidivist sentence was his August 22, 2019, conviction for fleeing in a vehicle with reckless disregard in violation of West Virginia Code § 61-5-17(f) (2014).[2] The petitioner was previously convicted of malicious assault in 1999 and wanton endangerment involving a firearm in 2003.

---

[1] West Virginia Code § 61-11-18, also known as the recidivist statute, has been amended three times since 2020 with the latest version becoming effective on June 9, 2022. Prior to June 5, 2020, the 2000 version of the statute was in effect. At issue herein are the 2000 and 2020 versions of the statute. For clarification purposes, we will refer to the effective date of the statute when discussing specific statutory language.

[2] West Virginia Code § 61-5-17(f) (2014), which was in effect when the petitioner committed this offense, provided:

> A person who intentionally flees or attempts to flee in a vehicle from a law-enforcement officer, probation officer or parole officer acting in his or her official capacity after the officer has given a clear visual or audible signal directing the person to stop, and who operates the vehicle in a manner showing a reckless indifference to the safety of others, is guilty of a felony and, upon conviction thereof, shall be fined not less than $1,000 nor more than $2,000 and shall be imprisoned in a state correctional facility not less than one nor more than five years.

This statute was amended in 2019 and again in 2020, but this subsection was not altered.

1

In this appeal, the petitioner contends that the circuit court erroneously applied the 2020 version of West Virginia Code § 61-11-18, rather than the 2000 version of the statute, in violation of the ex post facto clauses of the West Virginia and United States Constitutions[3] and West Virginia Code § 2-2-8 (1923).[4] He also argues that his sentence is unconstitutionally disproportionate to the crimes he has committed, particularly his triggering offense. Having carefully considered the parties' briefs and oral arguments, the submitted record, and the pertinent authorities, we affirm the circuit court's sentencing order for the reasons set forth below.

---

[3] Article III, Section 4 of the West Virginia Constitution provides: "No bill of attainder, ex post facto law, or law impairing the obligation of a contract shall be passed." The same provision is found in Article I, Section 10, clause 1 of the United States Constitution, which reads as follows: "No State shall ... pass any Bill of Attainder, ex post facto law, or law impairing the Obligation of Contracts[.]"

[4] West Virginia Code § 2-2-8 provides:

> The repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offense committed, or penalty or punishment incurred, before the repeal took effect, or the law expired, save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise specially provided; and that if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect.

## I. Facts and Procedural Background

The petitioner was indicted by a Marion County grand jury on October 2, 2017, on one count of fleeing in a vehicle with reckless disregard. According to the indictment, on June 11, 2017, the petitioner intentionally fled from a law enforcement officer after being directed to stop by "operating [a] vehicle at high rates of speed, passing other vehicles in the opposing lane of traffic, disregarding traffic lights, driving through busy intersections without yielding, and then crashing his vehicle into a curb." The petitioner was convicted of this offense on August 22, 2019, following a jury trial. Thereafter, the State filed an information against the petitioner charging him as a recidivist with three felony convictions. In addition to his 2019 conviction, the information alleged that the petitioner had been convicted of malicious assault in 1999 and wanton endangerment involving a firearm in 2003.

After the recidivist information was filed against the petitioner, the Legislature amended the habitual criminal statute and made the changes effective on June 5, 2020. Relevant to this appeal, the 2020 amendments to West Virginia Code § 61-11-18 enumerated a list of qualifying offenses for a recidivist sentence, which included the petitioner's triggering offense and his prior crimes.[5] The amended statute also

---

[5] West Virginia Code § 61-11-18(a) (2020) provided, in pertinent part:

> For purposes of this section, "qualifying offense" means any offenses or an attempt or conspiracy to commit any of the offenses in the following provisions of this code:

3

implemented a twenty-year look back provision regarding previous convictions. *See* W. Va. Code § 61-11-18(d) (2020) ("[A]n offense which would otherwise constitute a qualifying offense for purposes of this subsection and subsection (b) of this section shall not be considered if more than 20 years have elapsed between that offense and the conduct underlying the current charge.").

Subsequently, the petitioner reached an agreement with the State whereby he waived his right to a jury trial on the recidivist charge and admitted that he was the same person listed in the recidivist information who had been convicted of malicious assault and wanton endangerment. In exchange for the petitioner's admission, the State agreed to dismiss other unrelated criminal charges pending against him. The circuit court accepted the agreement and proceeded to sentencing on May 21, 2021.

At his sentencing hearing, the petitioner argued that his two prior felony convictions were too remote in time to be considered under the recidivist statute. The circuit court rejected this argument, referencing the twenty-year look back provision in the 2020 version of the statute and noting that all the offenses committed by the petitioner had

---

    . . . .
   (11) § 61-2-9a [malicious assault];
    . . . .
   (43) . . . §61-5-17(f) [fleeing in a vehicle with reckless disregard] . . . ;
    . . . .
   (47) § 61-7-12 [wanton endangerment involving a firearm][.]

occurred within a twenty-year period. The petitioner also argued that his triggering offense—fleeing in a vehicle with reckless disregard—did not involve actual or threatened violence, and therefore, the circuit court should exercise its discretion and impose a sentence less than the statutory sentence of life in prison. The circuit court rejected this argument as well, finding that all three felony offenses committed by the petitioner involved actual violence or threats of actual violence. The circuit court also observed that all three of the petitioner's crimes were qualifying offenses under the 2020 recidivist statute. The circuit court then imposed a sentence of life imprisonment upon the petitioner with parole eligibility after he serves fifteen years. The sentencing order was entered on June 7, 2021, and this appeal followed.

## II. Standard of Review

The petitioner is challenging his life recidivist sentence. Generally, we review "'sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, in part, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011). "Where the issue involves the application of constitutional protections, our review is de novo." *State v. Patrick C.*, 243 W. Va. 258, 261, 843 S.E.2d 510, 513 (2020). Regarding sentences imposed under the habitual criminal statute, we have specifically held that

> "[t]he appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5, will be analyzed as follows: We give initial

5

emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the statute." Syllabus Point 7, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981).

Syl. Pt. 11, *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019). With these standards in mind, we consider the parties' arguments.

### III. Discussion

The petitioner first argues that the circuit court violated the ex post facto clauses of the West Virginia and United States Constitutions and West Virginia Code § 2-2-8 by applying the 2020 version of the recidivist statute when it imposed his life sentence. It is well established that "'[u]nder Ex post facto principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him.' Syl. Pt. 1, *Adkins v. Bordenkircher*, 164 W.Va. 292, 262 S.E.2d 885 (1980)." Syl. Pt. 5, *Frazier v. McCabe*, 244 W. Va. 21, 851 S.E.2d 100 (2020). Similarly, West Virginia Code § 2-2-8 requires that "[t]he statutory penalty in effect at the time of the defendant's criminal conduct shall be applied to the defendant's conviction(s)." Syl. Pt. 13, in part, *State v. Shingleton*, 237 W. Va. 669, 790 S.E.2d 505 (2016), *superseded by statute on other grounds, as stated in State v. Sites*, 241 W. Va. 430, 438, 825 S.E.2d 758, 766 (2019).

6

The petitioner contends that the 2000 version of the recidivist statute was clearly applicable to his case because it was in effect at the time that he committed the offense of fleeing in a vehicle with reckless disregard and remained in effect at the time the recidivist information was filed against him. He argues that the circuit court nonetheless erroneously considered the provisions in the 2020 version of the statute when it imposed his sentence. In support of his contention, he points to the circuit court's references to the newly enumerated list of qualifying offenses and the newly implemented twenty-year look back provision in the 2020 version of the statute during his sentencing hearing. He also points to the circuit court's citation in the sentencing order to subsection (d) of the recidivist statute as the authority for imposing a life sentence, noting that this subsection did not exist in the 2000 version of West Virginia Code § 61-11-18.

Conversely, the State argues that to the extent the circuit court considered the 2020 amendments to West Virginia Code § 61-11-18, it did not violate the petitioner's constitutional or statutory rights because no harsher penalty was imposed as a result. The State further argues that the petitioner was not disadvantaged by any reference to the new provisions in the 2020 statute because this Court's jurisprudence under the 2000 version of the statute allowed for a recidivist life sentence to be imposed on a person in the petitioner's particular circumstances. We agree.

Certainly, "the ex post facto prohibition[] . . . forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished

occurred." *State ex rel. Phalen v. Roberts*, 245 W. Va. 311, 320, 858 S.E.2d 936, 945 (2021), *quoting Weaver v. Graham*, 450 U.S. 24, 30-31 (1981). There was no ex post facto violation in this case, however, because the 2020 amendments to the recidivist statute neither increased the punishment nor lengthened the sentence for a person determined to have been convicted of three felonies. Although a new subsection (d) was added to the statute through the 2020 amendments, the penalty to be imposed following a third felony conviction—life in prison—remained the same.

The petitioner was not disadvantaged by the circuit court's finding that the offenses he committed are among those enumerated in the 2020 statute as crimes that "qualify" a person to receive a recidivist sentence because the 2000 version also provided for the imposition of a life sentence for a person convicted of the three specific offenses committed by the petitioner. West Virginia Code § 61-11-18(c) (2000) provided: "When it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." As this Court observed in *State v. Norwood*, 242 W. Va. 149, 832 S.E.2d 75 (2019),

> [t]he sentencing provisions of our recidivist statute, contained in West Virginia Code § 61-11-18 (2000) are "free from ambiguity [and] its plain meaning is to be accepted and applied without resort to interpretation." Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970). This procedure provides:

8

> Where an accused is convicted of an
> offense punishable by confinement in the
> penitentiary and, after conviction but before
> sentencing, an information is filed against him
> setting forth one or more previous felony
> convictions, if the jury find or, after being duly
> cautioned, the accused acknowledges in open
> court that he is the same person named in the
> conviction or convictions set forth in the
> information, the court is without authority to
> impose any sentence other than as prescribed in
> Code, 61–11–18, as amended.

> Syllabus Point 3, *State ex rel. Cobb v. Boles,* 149 W.Va. 365,
> 141 S.E.2d 59 (1965)[.]

*Norwood*, 242 W.Va. at 157, 832 S.E.2d at 83 (additional citation omitted). Because all three felonies committed by the petitioner were punishable by confinement in the penitentiary, he was subject to the recidivist life sentence mandated by the 2000 version of the statute. As such, the circuit court's reference to the enumerated qualifying offenses set forth in the 2020 version of the statute did not operate to the petitioner's detriment.

Likewise, the petitioner was not disadvantaged by the circuit court's reference to the new provision in the 2020 version of the statute precluding consideration of prior offenses that occurred more than twenty years before the conduct underlying the current charge. Prior to the 2020 amendment, there was no remoteness limitation with respect to prior felony convictions. Indeed, this Court previously held:

> In the absence of any provision in the habitual criminal
> or recidivist statutes, W.Va. Code, 61-11-18 (1943), and W.Va.
> Code, 61-11-19 (1943), the remoteness of the prior convictions
> sought to be used in a recidivist trial need not be considered.

9

Syl. Pt. 2, *State v. Jones*, 187 W. Va. 600, 420 S.E.2d 736 (1992). In so holding, this Court reasoned:

> Obviously, when the life recidivist statute is invoked, the defendant will have at least two prior felony convictions. If they are serious felonies, the defendant will have served lengthy prison sentences. This means that at the time of the life recidivist trial, one or more of the earlier convictions may be rather old. Yet, the deterrent purpose of the recidivist statute would hardly be served if earlier felony convictions could be excluded because of their ages.

*Id.* at 604, 420 S.E.2d at 740. Because of the lack of a remoteness limitation in the 2000 version of the statute, the circuit court's reference to the new twenty-year look back provision in 2020 version of the statute was not detrimental to the petitioner. Accordingly, based on all the above, we find no merit to the petitioner's claim that the circuit court violated ex post facto principles or West Virginia Code § 8-8-2.[6]

The petitioner next argues that his life recidivist sentence is unconstitutionally disproportionate. "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of

---

[6] The petitioner has argued that not only did the circuit court fail to apply the statute in effect at the time that he committed the triggering offense, but it further erred by not giving him the option of choosing which version of the statute he wished to be applied at sentencing as required by West Virginia Code § 2-8-8. We find no merit to this argument because as discussed above, the 2020 amendments did not mitigate the punishment imposed by the recidivist statute.

the offence.'"  Syl. Pt. 8, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980).  This Court has long held that "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. Pt. 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

As set forth above, when reviewing the appropriateness of a life recidivist sentence, we consider the nature of the triggering offense and whether the prior offenses involved actual or threatened violence.  *Beck*, 167 W. Va. at 831, 286 S.E.2d at 236, syl. pt. 7.  In syllabus point twelve of *Hoyle*, we made clear that

> [f]or purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c) [(2000)], two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

*Hoyle*, 242 W. Va. at 604, 836 S.E.2d at 822.  In so holding, we recognized "the need for consistency in our law" that could only be achieved by defining the parameters for imposition of a life recidivist sentence.  *Id.* at 615, 836 S.E.2d at 833.

Here, the petitioner focuses his argument on his triggering offense, pointing out that it carries a maximum penalty of only five years in prison and was less serious in nature than his prior crimes.  He contends that, given these facts and the remoteness of his

11

two prior offenses, his life sentence is unconstitutionally disproportionate. The State maintains, however, that the petitioner's life recidivist sentence satisfies the *Hoyle* test because all three of the petitioner's felony offenses involved an element of violence. As the State notes, even the petitioner recognizes that his two prior felonies—malicious assault and wanton endangerment—involved actual violence or at least a threat of violence. The State further argues that the triggering offense also had a threat of violence as it involved operating a vehicle at a high rate of speed, disregarding traffic lights, driving through busy intersections without yielding to other vehicles, and ultimately crashing the vehicle into a curb. Such conduct the State contends clearly amounts to a threat of violence. Again, we agree.

Our focus when considering proportionality challenges to recidivist sentences has always been on the violence involved in all the offenses at issue because "crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute." *Beck*, 167 W. Va. at 830, 286 S.E.2d at 236. The petitioner has asserted that because the "seriousness" of his offenses declined and because the triggering offense only has a penalty of five years imprisonment, he should not have been given a life sentence. However, we simply cannot ignore the violence involved in the petitioner's two previous crimes. As this Court explained long ago, "[w]e do not believe that the sole emphasis can be placed on the character of the final felony which triggers the life recidivist sentence since a recidivist statute is also designed to enhance the penalty for persons with repeated felony convictions, i.e., the habitual offenders."

12

*Wanstreet*, 166 W. Va. at 533-34, 276 S.E.2d at 212. Moreover, the petitioner's claim that his triggering offense was not "as serious" and that he just "got in his car and drove away" from the police officer trying to arrest him on some outstanding warrants is unavailing.

We determined in *Norwood* that "evading police" is an offense that "clearly carries with it the risk of violence." *Id.* at 158, 832 S.E.2d at 84. In that case, the petitioner had been previously convicted under a Virginia statute analogous to West Virginia § 61-5-7(f).[7] Given that an essential element of the Virginia statute was "endanger[ing] the operation of a law enforcement vehicle or person," we concluded that the crime "carried with it the potential for actual violence." *Norwood*, 242 W. Va. at 159, 832 S.E.2d at 85. The same is true here. The petitioner was convicted of violating West Virginia Code § 61-5-7(f) because his conduct "show[ed] a reckless indifference to the safety of others." Indeed, the evidence presented at trial indicated that the petitioner drove at a high rate of speed through several busy intersections without yielding to other vehicles and disregarding traffic lights, placing other drivers and pedestrians at serious risk of injury.

---

[7] The Virginia statute at issue in *Norwood* provided:

> Any person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person is guilty of a Class 6 felony.

*Id.* at 159, 832 S.E.2d at 85.

The chase only ended because the petitioner crashed his vehicle. Without question, this crime involved a threat of violence and the petitioner's prior crimes of malicious assault[8] and wanton endangerment involving a firearm[9] obviously involved actual violence. Therefore, we find no merit to the petitioner's claim that his sentence is unconstitutionally disproportionate.

## IV. Conclusion

For the foregoing reasons, the June 7, 2021, order of the Circuit Court of Marion County sentencing the petitioner to life in prison under the habitual criminal statute is affirmed.

Affirmed.

---

[8] According to the pre-sentence report in the record, the petitioner "caused bodily injury to his girlfriend . . . by repeatedly hitting her in the face and body, causing her to sustain a concussion, a hematoma to her forehead, and a broken finger."

[9] This conviction resulted from the petitioner pointing a gun at an individual and then discharging it into the air.

14